UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE FLORIDA

UNITED STATES OF AMERICA

v.                                                                          CASE NO. 4:05CR50-01

CRAIG ROBERT WIGGEN, JR.,

Defendant.
_____/

### SENTENCING MEMORANDUM

Defendant, Craig Robert Wiggen, in accord with the decision in United States v. Booker, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a), requests this Court to impose a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a).[1] Those goals, the consideration of the "nature and circumstances of [Mr. Wiggen's] offense, " Mr. Wiggen's "history and characteristics," and the other factors set forth

---

[1] *See* United States v. Cawthorn, 429 F.3d 793, 802 (8th Cir. 2005) ("Under § 3553(a), the court shall impose a sentence sufficient, but not greater than necessary, to, for example, account for the nature and seriousness of the offense, provide just punishment, deter criminal conduct, protect the public, and avoid sentencing disparities"); United States v. Angelos, 345 F.Supp.2d 1227, 1240 (D. Utah 2004) ("In imposing sentences in criminal cases, the court is required by the governing statute - the Sentencing Reform Act - to 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the Act]'"); and United States v. Neufeld, No. 04-10386, 2005 U.S. App. LEXIS 24790, *27 (11th Cir. Nov. 16, 2005) (unpublished):

> The first sentence of the federal sentencing statute commands the district judge to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute, such as "to provide just punishment for the offense" and "to afford adequate deterrents to criminal conduct." 18 U.S.C. § 3553(a). Under the new advisory-guidelines system, a more-than-adequate sentence would conflict with § 3553(a)'s injunction against greater-than-necessary sentences.

in §3553(a) support a sentence of less than the thirty to thirty-seven months called for by the Probation's Office's Sentencing Guidelines calculations. § 3553(a).

Mr. Wiggen's "history and characteristics" include the fact that he is a twenty-six year old male who has no criminal history other than traffic violations. Mr. Wiggen has obtained his Associate of Arts degree and is in pursuit of his Bachelor of Arts degree. Mr. Wiggen's criminal activity appears to have been precipitated in large part by his affliction with what was at the time an undiagnosed mental illness.

Mr. Wiggen criminal record or absence thereof is demonstrative of the fact that this is an isolated incident. Mr. Wiggen has pursued academic and employment endeavors for the majority of his adult life. He has in no way demonstrated a devotion to criminal activity or a pattern of criminal activity. By all accounts, Mr. Wiggen presents as an intelligent young man who has engaged in criminal conduct that is isolated from his normal behavior.

The greatest impact in Mr. Wiggen's life appears to result from a severe mental illness that remained undiagnosed until the instant criminal conduct arose. Mr. Wiggen wants to assure this Court that he accepts full responsibility for his actions and he does not seek to use his mental illness as an excuse for his behavior. There is no dispute that Mr. Wiggen "knew" the criminality of his conduct. However, his mental illness does provide plausible explanation for why the criminal conduct arose.

Dr. Richard Alden Greer[2], a medical doctor in the field of Psychiatry and Neurology concludes that Mr. Wiggen has a diagnosis of Schizphreniform Disorder. (Richard Greer's Independent Medical Evaluation p. 3). Mr. Wiggen was undiagnosed up until May 2, 2005. He had been previously diagnosed by a family physician with Depression approximately four years prior to meeting with Dr. Greer which was treated with a regimen of Zoloft. (Richard Greer's Independent Medical Evaluation p. 2). Dr. Greer opined that Mr. Wiggen's mental illness was relevant to his criminal conduct in the context that

> "when an individual has difficulty coping with the responsibilities of routine functioning in society, they often have difficulty fulfilling their financial obligations as well. When confronted with typical and repeated concerns regarding housing, money and food individuals like Robbie [Mr. Wiggen] respond as other mentally ill individuals do. They will engage in behavior they know will obtain money in the 'short term' although it is not truly reliable or ultimately successful in the 'long term.' In other words, this physician feels strongly that Robbie [Mr. Wiggen] does not have an antisocial or criminal personality. Rather, when his symptoms cause him fuctional difficulty, such as problems with rent and grocery bills Robbie [Mr. Wiggen] is more likely to reach for an expeditious solution, albeit one which has possibly deleterious consequences." (Richard Greer's Independent Medical Evaluation p. 2-3).

Dr. Greer also opined that treatment for Mr. Wiggen's condition was available and provided the best alternative to prevent progression of the disease. (Richard Greer's Independent Medical Evaluation p. 3). Mr. Wiggen is currently stable and taking his medication regimen as prescribed.

---

[2] Dr. Greer is the Medical Director for Halifax Behavioral Services in Daytona Beach Florida. He graduated from University of Florida School of Medicine in 1985. He completed his residency at Harbor UCLA Medical Center. He completed his fellowship in Forensic Psychiatry at the University of Florida. He is Board Certified by the American Board of Psychiatry and Neurology in Psychiatry, Forensics, Geriatrics, and Addictions.

The foregoing explanation of Mr. Wiggen's mental health status does not provide Mr. Wiggen with an opportunity to request that this Court excuse his conduct. Instead, it provides a very concise explanation of why the criminal conduct arose. It arose based on societal pressures that Mr. Wiggen is not equipped to handle because of a mental illness as compared to an ordinary citizen without that mental illness. That illness impacts his judgment and his ability to make prudent decisions in solving problems that ordinary individuals confront. Mr. Wiggen can take little comfort in the reality that his recognition and understanding of his disease only came to light by virtue of his criminal conduct. He can take comfort in the knowledge that if he is diligent in taking his medications he can remain stable and prevent progression of the disease. In turn, it would appear that the same diligence would preclude Mr. Wiggen from a propensity to engage in further criminal conduct because he is better equipped to handle stressful situations.

This Court, in arriving at the sentencing decision in this case, must, of course, consult the United States Sentencing Guidelines. *See* <u>United States v. Munoz</u>, 430 F.3d 1357, 1369 (11th Cir. 2005). Nonetheless, courts must also consider the other factors set out in § 3553(a). Indeed, in some instances, the guidelines may have little persuasive force in light of some of the other § 3553(a) factors:

> Although "judges must still consider the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§ 3553(a) ]." *Id.* at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
>> the remedial majority in Booker [] direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and

4

> emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.
> United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

United States v. Glover, 431 F.3d 744, 752-753 (11th Cir. 2005) (Tjoflat, J. specially concurring).[3]

That was clearly the case in the recent decision in United States v. Williams, __F.3d __, 2006 WL 68559 (11th Cir. Jan. 13, 2006), where the Court of Appeals upheld a 90 month sentence although the Guidelines had called for a sentence of 188 to 235 months.

As to the "nature and circumstances" of the conduct, the undersigned has already detailed specific objections to the calculation of the loss amount based on intended loss being based on the "credit limit" in a letter to U.S. Probation Officer Cynthia J. Wilson on January 11, 2006. To the extent that Mr. Wiggen's Guidelines range is determined largely on the amount of the loss, there is reason to discount the value of the Guidelines. The fact is that the Guidelines, while proclaiming the goal of uniformity, sometimes fail to accomplish that goal when the sentence is based primarily on the amount of the loss. The Constitution Project recognized as much.[4] The Project's Sentencing

---

[3] *See also* United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1023 (D. Neb. 2005) ("post-Booker, the Sentencing Reform Act (SRA) requires the sentencing court to regard the guidelines' ranges as one of the many factors to consider in determining the sentence").

[4] It is a group which describes itself as "a bipartisan nonprofit organization that seeks consensus on controversial legal and constitutional issues thorough a unique combination of scholarship and activism," www.constitutionproject.org/index.cfm, Its Sentencing Initiative Project included such preeminent jurists as United States Supreme Court Justice Samuel Alito and United States District Court Judge Paul Cassel, author of the decision in United States v. Wilson, 350

Initiative report concludes that the Sentencing Guidelines "place excessive emphasis on quantifiable factors such as monetary loss and drug quantity, and not enough emphasis on other considerations such as the defendant's role in the criminal conduct."[5] The end result is that the Guidelines produce sentences that, while uniform by the standards of the Guidelines, sometimes fail to contemplate the actual circumstances of the criminal activity and inject speculation into what may have been "intended" without regard for the actual intention.

Even more than the statutory factor of the "nature and circumstances of the offense," the statutory factor of, in this case, Mr. Wiggen's "history and characteristics," is deserving of a primary role in determining his sentence. His history includes the circumstance that he chose to commit the crime while suffering from an undiagnosed mental illness.

> The goals set forth in §3553(a)(2) consist of the "need for the sentence imposed:
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational, training, medical care, or other correctional treatment in the most effective manner

Mr. Wiggen readily recognizes the seriousness of his offense and the hardship his actions have caused the victims. Nonetheless, given his absence of criminal record at age 26, his efforts at obtaining further education, the circumstances that led to the offense, his mental illness, and the

---

F.Supp.2d 910 (D. Utah 2005).

[5] http://www.constitutionproject.org/article.cfm?messageID=101.

apparent isolation of this incident, it is his hope that the Court will find that the goals of §3553(a)(2) are met with a sentence that omits any incarceration. Surely such a sentence is "sufficient but not greater than necessary to comply with" those goals.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered by electronic format and hand delivery to the office of Assistant United States Attorney Winifred L. Acosta-NeSmith and Federal Public Defender Randolph Murrell, this 14th day of February, 2006.

Respectfully submitted,

ROBERT A. MORRIS
Banks & Morris, P.A.
Florida Bar No. 0144680
810 Thomasville Road
Tallahassee, FL 32301
(850) 681-1010

Attorney for Defendant