UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


UNITED STATES OF AMERICA,          )
                                   ) *Case No.:  4:05cr50-RH*
            *Plaintiff,*            )
                                   ) *Tallahassee, Florida*
*vs.*                              ) *November 10, 2005*
                                   ) *11 A.M.*
*CRAIG ROBERT WIGGEN, JR. and*      )
*WILLIAM JOSHUA BOYD STETSON*,      )
                                   )
            *Defendant.*            )
_____    )



TRANSCRIPT OF INITIAL APPEARANCE AND PLEA TO INFORMATION
BEFORE THE HONORABLE ROBERT L. HINKLE,
CHIEF UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:          Gregory R. Miller
                            United States Attorney
                            By:  WINIFRED L. ACOSTA NeSMITH
                                 Assistant U.S. Attorney
                            111 North Adams Street
                            Tallahassee, Florida 32301


For the Defendant,          Banks and Morris, P.A.
CRAIG ROBERT WIGGEN, JR.: By:  ROBERT ALEXANDER MORRIS
                                 Attorney at Law
                            810 Thomasville Road
                            Tallahassee, Florida 32303


For the Defendant:          Randolph P. Murrell
WILLIAM JOSHUA STETSON:     United States Public Defender
                            By:  RANDOLPH P. MURRELL
                                 Attorney at Law
                            227 North Bronough Street
                            Tallahassee, Florida 32301

PDF created with pdfFactory trial version www.pdffactory.com

1                         P R O C E E D I N G S

2        (Call to Order of the Court.)

3        (Defendants present.)

4             THE COURT:  Good morning.  Please be seated.

5             Mr. Murrell?

6             MR. MURRELL:  Just waiting to step forward, whenever

7    you are ready.

8             THE COURT:  Certainly, please do.

9             MR. MURRELL:  I assume you want all of us or --

10            THE COURT:  Please.

11            This is United States versus William Joshua Boyd

12   Stetson and Craig Robert Wiggen, Jr.

13            Mr. Stetson and Mr. Wiggen, this hearing has been

14   scheduled to accomplish several things.  First, we're going to

15   have an initial appearance to advise you of the charges and

16   certain procedural matters.  Then it's my understanding that

17   you also have indicated to your lawyers, who have helped

18   schedule this with the clerk of the court, your intention to

19   enter a guilty plea.  You don't have to do that.  Whether to

20   do that or not is entirely up to you.  And we will go through

21   the process that I follow prior to acceptance of any guilty

22   plea.

23            Let me start by telling each of you that I'm a United

24   States District Judge; and, in fact, I am the United States

25   District Judge to whom your case is assigned.  The charges

PDF created with pdfFactory trial version www.pdffactory.com

1   against each of you are in two counts.  You're charged in

2   Count One with conspiracy to commit fraud through the use of

3   counterfeit credit cards during the period on or about

4   September 1st, 2004, through on or about January 31st, 2005.

5           You're charged in Count Two with the actual offense

6   of committing fraud through the use of counterfeit access

7   devices -- that is, counterfeit credit cards -- in violation

8   of Title 18, United States Code, Sections 1029(a)(1), 1029(c),

9   and 18, U.S.C., Section 2.

10          The charge in Count One is conspiracy in violation of

11  Title 18, United States Code, Section 371, the general

12  conspiracy statute, and Section 1029(b)(2), which deals with

13  conspiracies involving fraudulent credit cards -- that is,

14  access devices.

15          The maximum penalty that you face on -- and I need to

16  confirm with the lawyers, listen to this to make sure I have

17  this right.  I think I have it right.

18          The maximum penalty on Count One is five years'

19  imprisonment.  On Count Two it's ten years' imprisonment.  You

20  are also subject on each count to a fine of up to $250,000, a

21  period of supervised release of up to three years, a $100

22  special monetary assessment.  You could be required to forfeit

23  your interest in any proceeds of the offense and to make

24  restitution to any victim of the offense.

25          Do all of the lawyers agree that I have the five

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    years and ten years right?

 2              MS. NeSMITH:  Yes, Your Honor.

 3              MR. MURRELL:  I had actually thought it was ten years

 4    on that first count, but I guess it is five.

 5              MR. MORRIS:  I was of the same belief that it was ten

 6    on the first count.

 7              THE COURT:  All right.  I think the conspiracy

 8    provision in 1029(b)(2) says it's half as long as the

 9    substantive offense.

10              I should tell you each also that those penalties

11    could be added together.  So that, in fact, on both counts the

12    maximum penalty you face is 15 years.

13              Then I'm required to advise you also of your right to

14    remain silent.  You are not required to make any statement.

15    You have the right to consult with a lawyer before making any

16    statement, to have a lawyer present when you are questioned.

17    Any statement that you do make could be used against you at a

18    trial with the exception that I'm going to be asking you some

19    questions in a few minutes.  Statements that you make here

20    this morning in this proceeding would not be able to be used

21    against you on trial for these charges, if for some reason I

22    did not accept your plea and the case went to trial.  That's

23    the only exception.  It could be used against you in any

24    perjury prosecution.

25              While I'm mentioning that, let me tell you that, when
```

1    I start asking you questions here in a minute, you are going

2    to be under oath.  It's very important that you answer all of

3    my questions truthfully and completely.  If it should turn out

4    later that any of your answers was not completely truthful,

5    you would be subject to prosecution for perjury -- a separate

6    federal crime -- just as any witness who gives false testimony

7    in federal court would be subject to prosecution for perjury.

8    Any statement you make under oath this morning could be used

9    against you in any such prosecution.

10        You have the right to hire any lawyer of your choice;

11   and, if you are unable to afford a lawyer, you are entitled to

12   have one appointed for you.

13        Mr. Morris, you are retained in the case.

14        MR. MORRIS:  I am, Your Honor.

15        THE COURT:  Then, Mr. Stetson --

16        DEFENDANT STETSON:  Yes, Your Honor.

17        THE COURT:  I want to be sure I have the right people

18   matched up with the right lawyers.

19        Mr. Stetson, you submitted an affidavit concerning

20   your ability to employ counsel.

21        DEFENDANT STETSON:  Yes, sir.

22        THE COURT:  It's in this stack of papers.  I'll get

23   to it in just a moment.

24        DEPUTY CLERK:  (Handing.)

25        THE COURT:  Let me hand that back down to you.  I'm

1   going to have the clerk administer an oath to answer

2   truthfully the questions I'm about to ask you about your

3   financial affairs.

4           The clerk will please administer the oath.

5           DEPUTY CLERK:  Please raise your right hand.

6       *WILLIAM JOSHUA BOYD STETSON, THE DEFENDANT, DULY SWORN*

7           DEPUTY CLERK:  Please, state your full name and spell

8   your last name for the record.

9           DEFENDANT STETSON:  William Joshua Boyd Stetson,

10  S-t-e-t-s-o-n.

11          THE COURT:  Mr. Stetson, is that your signature on

12  the financial affidavit I've handed back down to you?

13          DEFENDANT STETSON:  Yes, Your Honor, it is.

14          THE COURT:  And before you signed it, did you read it

15  line-by-line and word-by-word?

16          DEFENDANT STETSON:  Yes, sir, I did.

17          THE COURT:  Is everything in here true?

18          DEFENDANT STETSON:  Yes, sir.

19          THE COURT:  And is it complete?

20          DEFENDANT STETSON:  Yes, sir, it is.

21          THE COURT:  Do you have any property that's not

22  listed on this form?

23          DEFENDANT STETSON:  No, sir.

24          THE COURT:  Or any source of funds?

25          DEFENDANT STETSON:  No, sir.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I find that Mr. Stetson qualifies for

2   appointment of counsel under the Criminal Justice Act.

3          Then, Mr. Murrell, the Federal Public Defender for

4   this district, is appointed as counsel for Mr. Stetson.

5          Now, let me tell you a couple of things about the

6   procedure, where we stand in the process right now.

7          Each of you has the right to have the government

8   proceed against you in the case only by indictment.  In

9   federal court, before you can be charged with a felony, an

10   indictment has to be returned by a grand jury.  That's a right

11   that you can waive.  In this case the grand jury has not

12   returned an indictment, and you can put the government to the

13   burden of presenting this to a grand jury to determine whether

14   a grand jury will indict you or not.

15          My understanding, based on information provided to

16   the clerk when this was scheduled and then relayed to me, was

17   that each of you prefers to proceed without an indictment --

18   that is, to waive your right to indictment and proceed in this

19   case just based on the information.  The information is a

20   document that's prepared by the government's prosecutor and

21   not reviewed by the grand jury.

22          What says the defense regarding waiver of right to an

23   indictment?

24          MR. MURRELL:  Yes, sir, we are going to waive the

25   right to an indictment.

1          THE COURT:  All right.  And, Mr. Stetson, you've

2     talked with Mr. Murrell, and that's the decision you want to

3     make?

4          DEFENDANT STETSON:  Yes, Your Honor.

5          THE COURT:  And, Mr. Wiggen, have you talked to

6     Mr. Morris, and is that the decision you would like to make in

7     the case as well?

8          DEFENDANT WIGGEN:  Yes, sir.

9          THE COURT:  I think we have written forms for waiver

10    of indictment.  I'm handing down the one for Mr. Wiggen and

11    for Mr. Stetson.

12          Each of the defendants has signed the written waiver

13    of indictment, as have their attorneys.  I've executed it

14    signifying my acceptance of the waivers.  I find that each

15    defendant has knowingly, voluntarily and intelligently waived

16    the right to indictment.

17          Now, another right that each of you has is the right

18    to a preliminary hearing at which the government would be

19    required to prove that there is probable cause for these

20    charges against you.  That also is a right that can be waived.

21          What says the defense?

22          MR. MURRELL:  Yes, sir, it's our intent to waive that

23    hearing.

24          THE COURT:  All right.  And, Mr. Stetson, is that

25    correct; you've decided to waive your right to that?

1          DEFENDANT STETSON:  Yes, sir.

2          THE COURT:  And Mr. Morris?

3          MR. MORRIS:  We intend to waive that right, Judge.

4          THE COURT:  All right.  And, Mr. Wiggen, have you

5    talked with Mr. Morris and do you agree to waive your right to

6    a preliminary hearing?

7          DEFENDANT WIGGEN:  Yes, sir.

8          THE COURT:  I find that each defendant has knowingly,

9    voluntarily and intelligently waived the right to a

10   preliminary hearing.

11         Each of you is entitled to release, if you qualify

12   under the terms of the Bail Reform Act, pending disposition of

13   the case.  I need to tell you a couple of things about that.

14         While you are on release, there may be restrictions

15   on what you can do or can't do.  And even if there are, any

16   period you spend on release will not count toward any sentence

17   of imprisonment that may be imposed in the case.

18         What says the government regarding release pending

19   trial and for that matter pending sentencing?

20         MS. NeSMITH:  The government is not seeking detention

21   for either defendants, Your Honor; therefore, the government

22   has no objection to releasing either defendant.

23         THE COURT:  All right.  I'll enter orders of release,

24   based on the execution of the appearance bonds, unsecured

25   bonds in the amount of $25,000 each.

1    Let me tell each of you the conditions on which you

2 will be released.

3    While you're on release, you're not to commit another

4 offense in violation of any federal, state or local law.

5 You're to appear at all proceedings as required, and surrender

6 for service of any sentence that is imposed.  Also, if you do

7 enter a guilty plea today and I accept it, then you'll be

8 required to appear for sentencing.  If you don't, it will not

9 only be a violation of your conditions of release, but it will

10 be a separate federal crime for failure to appear for

11 sentencing.

12    Another condition is that you execute a bond binding

13 you to pay $25,000 to the government in the event of any

14 failure to appear as required or any failure to surrender for

15 service of sentence.

16    While on release you're to maintain or seek active

17 employment, to reside at your current address, and not travel

18 beyond this district, the Northern District of Florida, unless

19 you have the prior approval of the probation officer.  You're

20 to report to your assigned probation officer here in this

21 building as directed by the officer.  You are to avoid all

22 contact with any individuals who are considered either alleged

23 victims or potential witnesses in the case.  You are not to

24 possess any firearm, destructive device, or dangerous weapon.

25 You are to refrain from excessive use of alcohol or any

1   unlawful use of a narcotic drug or other controlled substance,

2   unless prescribed by a medical doctor.  You are to surrender

3   any passport to the clerk of the court and not obtain a

4   passport.  And you will be subject to random urinalysis at the

5   direction of the assigned probation officer.  Failure to

6   comply with those conditions may result in your immediate

7   arrest and may also constitute a criminal offense.

8           MR. MURRELL:  Judge, Mr. Stetson is a full-time

9   student.  I assume that will suffice for the employment

10  requirement.

11          THE COURT:  It will.

12          Now that completes the initial appearance part of the

13  proceeding.  If I understand it correctly, each defendant is

14  prepared to proceed with arraignment.

15          MR. MURRELL:  Yes, sir.

16          MR. MORRIS:  Yes, sir.

17          THE COURT:  Each of you has the right to have the

18  information read to you.  What says the defense regarding the

19  reading of the charges?

20          MR. MURRELL:  We are going to waive the reading of

21  the information.

22          MR. MORRIS:  We would also waive the reading of the

23  information, Your Honor.

24          THE COURT:  All right.  Has each of you gotten a copy

25  of the information and read it prior to now?

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              DEFENDANT WIGGEN:  Yes, sir.

 2              THE COURT:  Mr. Stetson, have you?

 3              DEFENDANT STETSON:  Yes, Your Honor, I have.

 4              THE COURT:  All right.  Please swear Mr. Wiggen.

 5              DEPUTY CLERK:  Please raise your right hand.

 6      CRAIG ROBERT WIGGEN, JR., THE DEFENDANT, DULY SWORN

 7              DEPUTY CLERK:  Please, state your full name and spell

 8      your last name for the record.

 9              DEFENDANT WIGGEN:  Craig Robert Wiggen, W-i-g-g-e-n.

10              THE COURT:  All right.  And, Mr. Stetson, you are

11      still under oath from the oath you took just a moment ago.

12              Let me start, Mr. Stetson, with you.  Tell me how old

13      you are.

14              DEFENDANT STETSON:  Twenty-nine years old, sir.

15              THE COURT:  Have you ever been known by any names

16      other than William Joshua Boyd Stetson?

17              DEFENDANT STETSON:  No, sir.

18              THE COURT:  You're in school now?

19              DEFENDANT STETSON:  Yes, sir.

20              THE COURT:  Where?

21              DEFENDANT STETSON:  Tallahassee Community College,

22      doing a second degree for computer programming and analysis.

23              THE COURT:  All right.  A second degree.  You have a

24      first degree?

25              DEFENDANT STETSON:  I have an Associate's Degree.
```

1          THE COURT:  Okay.  What city or town do you live in?

2          DEFENDANT STETSON:  I live here in Tallahassee, sir.

3          THE COURT:  Mr. Wiggen, have you ever been known by

4   any other names other than Craig Robert Wiggen, Jr.?

5          DEFENDANT WIGGEN:  No, sir.

6          THE COURT:  How old are you?

7          DEFENDANT WIGGEN:  Twenty-six.

8          THE COURT:  What city or town do you live in?

9          DEFENDANT WIGGEN:  Tallahassee.

10          THE COURT:  How far have you gone in school?

11          DEFENDANT WIGGEN:  I have gotten beyond the

12   Associate's level.

13          THE COURT:  All right.  So more than two years of

14   college?

15          DEFENDANT WIGGEN:  Yes.

16          THE COURT:  But less than four?

17          DEFENDANT WIGGEN:  Well, more than four but no

18   degree.

19          THE COURT:  Okay.  What type work have you done?

20          DEFENDANT WIGGEN:  I've done computer programming.

21          THE COURT:  Have either of you ever been treated for

22   any mental or psychological problem?

23          DEFENDANT STETSON:  No, sir.

24          DEFENDANT WIGGEN:  Yes, sir.

25          THE COURT:  Did you get a diagnosis?

1            DEFENDANT WIGGEN:  Yes, sir.

2            THE COURT:  What was the diagnosis?

3            DEFENDANT WIGGEN:  Schizophrenia.

4            THE COURT:  When were you treated?

5            DEFENDANT WIGGEN:  About six months ago.

6            THE COURT:  How are you doing now?

7            DEFENDANT WIGGEN:  I'm fine.

8            THE COURT:  Are you still under treatment?

9            DEFENDANT WIGGEN:  Yes, sir.

10           THE COURT:  Do you take any medicine for that

11 condition?

12           DEFENDANT WIGGEN:  Yes, sir.

13           THE COURT:  Is the type and dosage of medicine that

14 you've taken for the last week exactly what's been prescribed

15 by your doctor?

16           DEFENDANT WIGGEN:  Yes, Your Honor.

17           THE COURT:  What type doctor are you under the care

18 of?  A psychiatrist?

19           DEFENDANT WIGGEN:  Yes, sir.

20           THE COURT:  Is the type and dose of medicine that you

21 have taken for the last week exactly the same that you've

22 taken for the period of at least three months?

23           DEFENDANT WIGGEN:  Yes.

24           THE COURT:  And, while you're on your medicine, are

25 you fully able to function, make decisions, understand your

PDF created with pdfFactory trial version www.pdffactory.com

```
1   situation, evaluate choices in your life -- do all of those

2   kinds of things?

3            DEFENDANT WIGGEN:  Yes, sir.

4            THE COURT:  Mr. Morris, have you been able to

5   communicate fully with Mr. Wiggen?  Has he provided you all of

6   the assistance that you expect from a defendant?

7            MR. MORRIS:  Yes, sir, Judge.  I've met with

8   Mr. Wiggen as well as his family on numerous occasions.  I've

9   had an opportunity to review all of the factual information.

10  He's provided me with feedback throughout the process.  He

11  seems fully aware of the nature of the charges, the maximum

12  and minimum penalties -- all of the things that I would expect

13  a client to engage on.

14           THE COURT:  Have you had any difficultt in dealing

15  with him at all, or seeing any signs that he may have a mental

16  illness of any kind?

17           MR. MORRIS:  Certainly I'm aware of the fact that he

18  does have a medical illness, but it appears to be one that is

19  treated by a professional doctor.  He appears to be taking his

20  medication as prescribed and to be functioning at a good

21  level.

22           THE COURT:  All right.  And have you investigated

23  that sufficiently to be confident that he is, first, competent

24  to proceed; and, second, that there is not an insanity defense

25  or other defense along those lines in connection with these
```

1    charges?

2            MR. MORRIS:  I have, Your Honor.  During the pendency

3    of the state case, which remains pending, an evaluation was

4    conducted by Dr. Greer out of Daytona Beach, and Dr. Greer

5    wound up providing the initial diagnosis and assessment that

6    Mr. Wiggen has provided to Your Honor.  Based on my

7    interactions, I do not believe that there is any -- and my

8    knowledge of those reports -- I do not believe that there is a

9    viable insanity defense, and I have every belief that

10   Mr. Wiggen is competent to proceed.

11           THE COURT:  All right.  So, the doctor who treated

12   Mr. Wiggen --

13           Mr. Wiggen, I asked you about treatment.  You said

14   you had been treated.  Is that the same Dr. Greer from Daytona

15   Beach?  Is that the one and only doctor that's treated you?

16           DEFENDANT WIGGEN:  That's correct; yes, sir.

17           THE COURT:  And that treatment was done in connection

18   with state criminal charges?

19           DEFENDANT WIGGEN:  Yes, sir.

20           THE COURT:  And was it Dr. Greer's conclusion that

21   you were competent to proceed?

22           DEFENDANT WIGGEN:  Yes, sir.

23           THE COURT:  And was -- tell me what happened in state

24   court on that issue.

25           MR. MORRIS:  It was never raised.  The matter has

PDF created with pdfFactory trial version www.pdffactory.com

1    remained pending in state court, and the assistant state

2    attorney assigned to the case is going to enter a nol pros. of

3    that case based on the federal charges.  So, the issue has

4    never been addressed in state court.  We approached the doctor

5    on our own, first of all, for Mr. Wiggen's personal benefit;

6    and, secondarily, in the event that mitigation were necessary,

7    those reports were generated by a family doctor, who he's

8    under the treatment of now.  There have not been any

9    collateral or ancillary proceedings, though, as it relates to

10   competency.

11            THE COURT:  Ms. NeSmith, I'm prepared to proceed.  Is

12   there anything else you would like me to inquire about along

13   those lines?

14            MS. NeSMITH:  No, Your Honor.

15            THE COURT:  Have either of you had any alcohol in the

16   last 24 hours?

17            DEFENDANT WIGGEN:  No, Your Honor.

18            DEFENDANT STETSON:  No, sir.

19            THE COURT:  Mr. Stetson, have you had any drugs of

20   any kind -- prescription, non-prescription, legal or

21   illegal -- in the last 24 hours?

22            DEFENDANT STETSON:  No, sir.

23            THE COURT:  Mr. Wiggen, have you had any drugs or

24   pharmaceutical products of any kind other than prescribed in

25   connection with the mental-health issues we've just discussed?

1           DEFENDANT WIGGEN:  No, Your Honor.

2           THE COURT:  What drugs have you taken in connection

3    with the mental-health issues?

4           DEFENDANT WIGGEN:  Abilify, A-b-i-l-i-f-y, I think.

5           THE COURT:  All right.  I think I've covered this

6    before.  What you've taken is just the exact dosage that was

7    prescribed by the doctor and the same dosage you've been

8    taking for at least three months?

9           DEFENDANT WIGGEN:  Yes.

10          THE COURT:  Let me talk to each of you about the

11   rights that you have.

12          First, you don't have to plead guilty.  You are

13   welcome to enter a plea of not guilty and proceed to trial.

14   You're entitled to a trial by a jury.  You're entitled to be

15   represented by a lawyer at every stage of the case, and to

16   have one appointed for you if you are unable to retain your

17   own.  The right to be represented by a lawyer would include

18   during the jury trial.

19          I told you about your right to remain silent, and

20   that would apply also to the jury trial.  You would not be

21   required to testify at the trial.  You could testify if you

22   wanted to.  Whether to testify or not would be entirely up to

23   you.

24          You have the right to confront the witnesses; that

25   means all of the witnesses would come into the courtroom.

1   There would not be a secret evidence.  You would see it all

2   presented right here in open court.  Your lawyer would be able

3   to cross-examine witnesses, to ask them questions.

4           At the jury trial you would have the right to present

5   evidence in your own defense.  You would have the right to

6   compel the attendance of witnesses.  That means, if there are

7   people you would like to have testify, they could be

8   subpoenaed and required to come to court to testify.

9           And at the jury trial the government would be

10  required to prove your guilt beyond a reasonable doubt.

11          Do each of you understand all of those rights?

12          DEFENDANT STETSON:  Yes, Your Honor.

13          DEFENDANT WIGGEN:  Yes, Your Honor.

14          THE COURT:  Now, if you plead guilty, you give up all

15  of those rights, except the right to be represented by a

16  lawyer.  You will still be represented by a lawyer.  But other

17  than that, you give up all the rights I've just discussed.  Do

18  you understand?

19          DEFENDANT STETSON:  Yes, Your Honor.

20          DEFENDANT WIGGEN:  Yes, sir.

21          THE COURT:  If you plead guilty, there's not going to

22  be a trial of any kind.  Do you understand that?

23          DEFENDANT STETSON:  Yes, Your Honor.

24          DEFENDANT WIGGEN:  Yes, Your Honor.

25          THE COURT:  It may be that you have some defense to

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   these charges.  I don't know whether you do or not.  But, if

 2   you plead guilty, it won't matter; because, by pleading

 3   guilty, you waive -- that is, you give up -- any defense you

 4   might have had.  Do you understand?

 5              DEFENDANT STETSON:  Yes, Your Honor.

 6              DEFENDANT WIGGEN:  Yes, Your Honor.

 7              THE COURT:  I've described the charges for you

 8   already.  There is a statement of facts in the case prepared

 9   by the government.  This is a seven-page document.  I've been

10   provided a copy in advance so I would be prepared for this

11   hearing.  I'm going to hand those back down.  I'm going to

12   hand those back down to you.

13              MS. NeSMITH:  Your Honor, just for the record, the

14   statement of facts are different.  There are different

15   variations.  I just wanted to make sure that the court was

16   aware that they are not exactly the same verbatim.

17              THE COURT:  I was not aware of that.  I read one and

18   it's got both names in the title.  I'm not sure you've got the

19   right ones.

20              Do each of you have your own?

21              MR. MURRELL:  Yes, sir.

22              MR. MORRIS:  Yes, sir.

23              THE COURT:  Mr. Stetson, is that your signature on

24   the last page of the statement of facts filed in your case?

25              DEFENDANT STETSON:  Yes, it is, Your Honor.
```

1          THE COURT:  Before you signed it, did you read it

2    line-by-line and word-by-word?

3          DEFENDANT STETSON:  Yes, sir, I did.

4          THE COURT:  Mr. Wiggen, is that your signature on the

5    last page of the statement of facts in your case?

6          DEFENDANT WIGGEN:  Yes, sir.

7          THE COURT:  And before you signed it, did you read it

8    line-by-line and word-by-word?

9          DEFENDANT WIGGEN:  Yes, Your Honor.

10          THE COURT:  When I come to court for a proceeding

11    like this and there is a statement of facts, sometimes a

12    defendant tells me everything in it is true.  Sometimes a

13    defendant tells me that there are parts of it that he

14    disagrees with.  The acknowledgment that you signed at the

15    back of this above your signature says that you agree that the

16    government could present evidence or could prove every element

17    of the charge, but you reserve the right to present your own

18    version of the facts, and that's perfectly appropriate.

19          What I need to know in this case is whether

20    everything in the statement of facts is true or are there

21    parts that you disagree with, and your lawyers can help with

22    this as well.

23          Mr. Murrell, is it all true from your perspective?

24          MR. MURRELL:  Yeah, it's essentially true.  I mean,

25    there is one statement here where Mr. Stetson knew Defendant

PDF created with pdfFactory trial version www.pdffactory.com

1    Wiggen was using the credit cards to make purchases.  He

2    assumed he was doing that.  He didn't know exactly where he

3    was making the purchases and so on.  But, other than that, I

4    think that Mr. Stetson would agree with everything that's in

5    there.

6          THE COURT:  All right.  Mr. Stetson, is that right?

7    With the clarification that Mr. Murrell just made, is

8    everything in this statement of facts true?

9          DEFENDANT STETSON:  Yes, Your Honor.

10          MR. MURRELL:  And I should say a lot of this has to

11    do with what Mr. Wiggen did on his own, and we don't know what

12    he did or did not do.  The statement encompasses both the

13    conduct of Mr. Stetson and Mr. Wiggen.

14          THE COURT:  All right.  And would it be fair to say,

15    then, Mr. Stetson, to the extent that the statement of facts

16    talks about anything you did, it's all true?

17          DEFENDANT STETSON:  Yes, Your Honor.

18          THE COURT:  Mr. Morris, tell me your position.

19          MR. MORRIS:  Mr. Wiggen concurs with the veracity of

20    the allegations put forward with the exception that there are

21    details.  For instance, if I could direct Your Honor's

22    attention to page 3 in the second full sentence at the top of

23    that page where it indicates that Mr. Wiggen stated he

24    purchased an electronic device called a re-encoder to encode

25    approximately ten blank gift cards.  The statement that

PDF created with pdfFactory trial version www.pdffactory.com

1   Mr. Wiggen takes exception to is in the sense that that was

2   not the operation of the criminal activity in each instance.

3   The general overview that the government has laid forth and

4   set forth of how the crime was committed is generally correct;

5   however, some of the information was re-encoded on to other

6   credit cards, for instance, as compared to a blank gift card.

7            But there is information, based by virtue of

8   Mr. Wiggen's statements to the government and to the

9   investigators, that gift cards were used or purchased in some

10  instances, just not in every instance.

11           Similarly, Judge, there is mention in the statement

12  of facts that a laptop computer was utilized by Mr. Wiggen

13  and/or Stetson.  Mr. Wiggen has advised me that that was not

14  the case.  Nonetheless, a computer was, in fact, used in the

15  operation of the conduct that's set forth.

16           THE COURT:  So what wasn't true about it?

17           MR. MORRIS:  There wasn't a laptop.

18           THE COURT:  Okay.  It's a desktop rather than a

19  laptop.

20           MR. MORRIS:  Correct.  So, it's just distinction and

21  the hair-splitting which I don't think that Your Honor wants

22  to engage in, but --

23           THE COURT:  No, but that was the question I asked, so

24  I appreciate it.

25           MR. MORRIS:  Sure.

1          THE COURT:  Mr. Wiggen, with those qualifications --

2    that is, the qualifications that Mr. Morris just gave me -- is

3    the statement of facts true?

4          MR. MORRIS:  If there are other additional ones, we

5    need to let the judge know that.

6          DEFENDANT WIGGEN:  Okay.  The general overview is

7    true.

8          THE COURT:  Do this for me:

9          Give me a brief summary of what happened, what you

10   did.

11         DEFENDANT WIGGEN:  Just downloaded some data and

12   re-encoded it.  I'm sorry.

13         THE COURT:  Give me a broader version than that.  I

14   said brief, but I didn't mean that brief.  Tell me how you did

15   this.

16         DEFENDANT WIGGEN:  We just collected information on a

17   portable device.

18         THE COURT:  Well --

19         MR. MORRIS:  Explain how you end up doing that.

20         THE COURT:  A customer shows up at Tia's.

21   Mr. Stetson was a waiter, right?

22         DEFENDANT WIGGEN:  Yes.

23         THE COURT:  So, he got a credit card in his hand,

24   when the customer went to pay.  Yes?

25         DEFENDANT WIGGEN:  Yes.

1          THE COURT:  Walk me through it.  What happened from
2    there?
3          DEFENDANT WIGGEN:  The information was recorded on a
4    portable device.  It could be --
5          THE COURT:  Who had the portable device?
6          DEFENDANT WIGGEN:  Mr. Stetson.
7          THE COURT:  And was it there at the restaurant?
8          DEFENDANT WIGGEN:  Yes.
9          THE COURT:  So, he had a device at the restaurant?
10         DEFENDANT WIGGEN:  That I provided him with.
11         THE COURT:  You got him the device, and he was able
12   to take this credit card, put it in this device, and capture
13   the information.
14         DEFENDANT WIGGEN:  Yes.
15         THE COURT:  And then take the credit card back to the
16   customer.
17         DEFENDANT WIGGEN:  Yes.
18         THE COURT:  So, then he had the information on this
19   device.  What happened from there?
20         DEFENDANT WIGGEN:  He would provide it to me.  I
21   would download the information off of the device, and then
22   encode it on to another magnetic card.
23         THE COURT:  All right.  And that's what Mr. Morris
24   was telling me about.  This other magnetic card, it could be a
25   gift card; it could be --

1          DEFENDANT WIGGEN:  Anything.

2          THE COURT:  All right.  But it would be a card that

3    looked like a credit card --

4          DEFENDANT WIGGEN:  Yes, Your Honor.

5          THE COURT:  -- or a gift card, but a plastic card

6    that's about that size.

7          DEFENDANT WIGGEN:  Uh-huh.

8          THE COURT:  And then what did you do from there?

9          DEFENDANT WIGGEN:  Made purchases.

10         THE COURT:  Did you present the card to vendors?

11         DEFENDANT WIGGEN:  No, Your Honor.

12         THE COURT:  So, it was always done using the numbers,

13   but without actually having to present a card.

14         DEFENDANT WIGGEN:  It was only used in locations

15   where the card would not have to be presented.

16         MR. MORRIS:  He's drawing a distinction between the

17   swiping machines as compared to actually handing it to a

18   merchant.

19         THE COURT:  Oh, okay.  So you could swipe it through

20   a machine.

21         DEFENDANT WIGGEN:  Yes, Your Honor.

22         THE COURT:  All right.  Did the card look like a

23   credit card?

24         DEFENDANT WIGGEN:  Yes, Your Honor.

25         THE COURT:  So, if you had to give it to somebody,

```
 1   would they have thought it was a credit card?

 2          DEFENDANT WIGGEN:  Yes, Your Honor.

 3          THE COURT:  All right.  But, in general, what you

 4   would do is go to Lowe's or Home Depot, for example, and you

 5   have your purchases and swipe it through the machine.  Nobody

 6   ever looks at the card.  You just buy the stuff.  Right?

 7          DEFENDANT WIGGEN:  Correct, Your Honor.

 8          THE COURT:  And then you would sell the stuff on eBay

 9   or -- typically?

10          DEFENDANT WIGGEN:  Yes.

11          THE COURT:  And sometimes you also bought gas with

12   the device -- with the cards?

13          DEFENDANT WIGGEN:  Yes.  Groceries.

14          THE COURT:  All right.

15          Mr. Stetson, is what Mr. Wiggen just told me a fair

16   description of what happened?

17          DEFENDANT STETSON:  Yes, Your Honor, it is.

18          THE COURT:  I've already explained to each of you the

19   maximum sentence that you face in the case.  Let me tell you

20   something about the sentencing procedure.

21          There are guidelines that apply in your case.  Let me

22   ask each of you this:

23          Have you had a chance to talk with your lawyer about

24   the United States Sentencing Guidelines and what they might

25   call for in your case?
```

1          DEFENDANT STETSON:  Yes, I have, Your Honor.

2          DEFENDANT WIGGEN:  Yes, sir.

3          THE COURT:  Each of you has a very experienced lawyer

4  who has dealt with the United States Sentencing Guidelines

5  many times, but your lawyer doesn't necessarily know what the

6  guidelines will call for in your case.  There are at least two

7  reasons for that.

8          First, your lawyer may not know all of the facts that

9  go into calculating the guidelines range.

10         Second, there sometimes are disagreements about what

11  the guidelines mean or how they should be applied in a

12  particular case.  Your lawyer doesn't necessarily know what

13  rulings I'll make on any such disagreements, just like

14  Ms. NeSmith, as the lawyer for the government, doesn't

15  necessarily know what rulings I'll make.

16         Do you understand?

17         DEFENDANT STETSON:  Yes, Your Honor.

18         DEFENDANT WIGGEN:  Yes, Your Honor.

19         THE COURT:  If it should turn out later that the

20  guidelines are different from what your lawyer has discussed

21  with you, that will not be a basis for you to withdraw your

22  guilty plea.  Your guilty plea will still stand.

23         Do you understand?

24         DEFENDANT STETSON:  Yes, sir.

25         DEFENDANT WIGGEN:  Yes, Your Honor.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'm required to consider the guidelines

2    in deciding the sentence to impose in the case.  But I also

3    consider a number of other factors, and the sentence will not

4    necessarily be within the guidelines range.  I can impose a

5    sentence that is either more severe or less severe than what

6    the guidelines call for.

7          Do you understand?

8          DEFENDANT STETSON:  Yes, sir.

9          DEFENDANT WIGGEN:  Yes, sir.

10         THE COURT:  If it should turn out for any reason that

11   the sentence in the case is more severe than you might hope

12   for or expect, that will not be a basis for you to withdraw

13   your guilty plea.

14         Do you understand?

15         DEFENDANT STETSON:  Yes, Your Honor.

16         DEFENDANT WIGGEN:  Yes, Your Honor.

17         THE COURT:  Another way to tell you essentially the

18   same thing is this:

19         Some of the decisions I make in connection with

20   sentencing can be appealed to a higher court.  On some issues

21   what I do essentially will be final and the appellate court

22   won't review it.  What that means is, if you don't like the

23   sentence I impose, you may or may not be able to get the

24   appellate court to review the matter.  What you will not be

25   able to do is take back your guilty plea.

1          Do you understand?

2          DEFENDANT STETSON:  Yes, Your Honor.

3          DEFENDANT WIGGEN:  Yes, sir.

4          THE COURT:  In determining the sentence in the case,

5   I will be able to take into account all of the relevant facts,

6   not just the facts that we have discussed here in the

7   courtroom and not just the facts included in the government's

8   statement of facts.

9          Do you understand?

10          DEFENDANT STETSON:  Yes, Your Honor.

11          DEFENDANT WIGGEN:  Yes, sir.

12          THE COURT:  There are written plea agreements for

13   each defendant.  Each of these is a four-page document.  I'm

14   going to hand those down.

15          Mr. Stetson, is that your signature on page 4 of your

16   plea agreement?

17          DEFENDANT STETSON:  Yes, it is, Your Honor.

18          THE COURT:  And, Mr. Wiggen, is that yours?

19          DEFENDANT WIGGEN:  Yes, Your Honor, it is.

20          THE COURT:  Let me ask each of you:

21          Before you signed it, did you read it line-by-line

22   and word-by-word?

23          DEFENDANT STETSON:  Yes, I did, Your Honor.

24          DEFENDANT WIGGEN:  Yes, sir, I did.

25          THE COURT:  Did you understand every word of it?

```
 1              DEFENDANT STETSON:  Yes, sir, I did.

 2              DEFENDANT WIGGEN:  Yes, sir.

 3              THE COURT:  Do you agree to every word of it?

 4              DEFENDANT STETSON:  Yes, sir.

 5              DEFENDANT WIGGEN:  Yes, sir.

 6              THE COURT:  I do note that it refers to the maximum

 7    penalties as ten years in prison, and that is the maximum

 8    penalty on Count Two.  Actually, as I told you before, it's

 9    five years on Count One.  And those could be added together.

10    So, the maximum on both counts together theoretically could be

11    up to 15 years.

12              Do you understand?

13              DEFENDANT STETSON:  Yes, Your Honor.

14              DEFENDANT WIGGEN:  Yes, sir.

15              THE COURT:  Does that written plea agreement include

16    everything you've agreed to with the government?

17              DEFENDANT STETSON:  Yes, it does, Your Honor.

18              DEFENDANT WIGGEN:  Yes, sir, it does.

19              THE COURT:  Have you agreed to anything at all with

20    the government that's not included in the plea agreement?

21              DEFENDANT STETSON:  No, Your Honor.

22              DEFENDANT WIGGEN:  No, sir.

23              THE COURT:  Has anybody made any promise about what

24    sentence will be imposed if you plead guilty in the case?

25              DEFENDANT STETSON:  No, Your Honor.
```

1          DEFENDANT WIGGEN:  No, sir.

2          THE COURT:  Have either of you had any discussions

3   yourself -- you, individually -- with anybody from the

4   government, any law enforcement officer, police officer,

5   prosecutor, anybody from the government about pleading guilty

6   or what will happen if you plead guilty?

7          DEFENDANT STETSON:  No, Your Honor.

8          DEFENDANT WIGGEN:  No, sir.

9          THE COURT:  Have all of the plea discussions been

10  carried on for you by your lawyer?

11         DEFENDANT STETSON:  Yes, Your Honor.

12         DEFENDANT WIGGEN:  Yes, sir.

13         THE COURT:  Has anybody threatened you or pressured

14  you or intimidated you to get you to plead guilty?

15         DEFENDANT STETSON:  No, Your Honor.

16         DEFENDANT WIGGEN:  No, sir.

17         THE COURT:  Has anybody used any force against you?

18         DEFENDANT STETSON:  No, Your Honor.

19         DEFENDANT WIGGEN:  No, sir.

20         THE COURT:  I would ordinarily inquire at this point

21  about substantial assistance.  I don't know if that has any

22  bearing on this case or not.

23         Is there any prospect of assistance in this case?

24         MR. MURRELL:  Well, if you are asking me, Mr. Stetson

25  is certainly willing to cooperate, but I don't think it's a

```
1   case that lends itself to substantial assistance, as far as

2   his case goes.

3           THE COURT:  Well, let me just tell each of you this:

4           The governing statutes and the sentencing guidelines

5   provide that, if a defendant provides substantial assistance

6   to the government, the government files a motion indicating

7   that you have done that, that would be sufficient by itself to

8   allow me to impose a sentence below the guidelines range, if I

9   choose to do so.  What I need you to understand this morning

10  is this:

11          If you do have any information that you provide the

12  government -- that is, you cooperate with the government in

13  the investigation or prosecution of others -- then the

14  government -- that is, the prosecutor -- decides whether that

15  assistance rises to the level of substantial assistance.  If

16  you don't like the government's decision about that, there

17  won't be anything you can do about it.

18          If the government does file a motion, a substantial

19  assistance motion, then it's entirely up to me to decide

20  whether to reduce your sentence as a result and, if so, how

21  much to reduce it.

22          If you don't like my decision about that, there won't

23  be anything you can do about that.  That's one of the things

24  that the appellate court will not review.

25          Do each of you understand all of that?
```

```
 1              DEFENDANT STETSON:  Yes, Your Honor.
 2              DEFENDANT WIGGEN:  Yes, sir.
 3              THE COURT:  Have each of you had as long as you would
 4    like to talk about your case with your lawyer?
 5              DEFENDANT STETSON:  Yes, Your Honor.
 6              DEFENDANT WIGGEN:  Yes, sir.
 7              THE COURT:  Has your lawyer answered all of your
 8    questions about the case?
 9              DEFENDANT STETSON:  Yes, he has, Your Honor.
10              DEFENDANT WIGGEN:  Yes, sir.
11              THE COURT:  Are you satisfied with the way your
12    lawyer has represented you in the case?
13              DEFENDANT STETSON:  Yes, sir.
14              DEFENDANT WIGGEN:  Yes, sir.
15              THE COURT:  Do you have any complaints at all about
16    the way your lawyer has represented you?
17              DEFENDANT STETSON:  No, sir, I do not.
18              DEFENDANT WIGGEN:  No, sir.
19              THE COURT:  Mr. Murrell, can you assure me that so
20    far as you are aware this plea is freely and voluntarily
21    entered with full knowledge of the consequences, and that
22    there are no agreements or understandings of any kind with the
23    government other than as set forth in the written plea
24    agreement?
25              MR. MURRELL:  Yes, sir.
```

```
 1            THE COURT:  Mr. Morris, can you give me the same
 2   assurance?
 3            MR. MORRIS:  I can, Your Honor.
 4            THE COURT:  Ms. NeSmith, can you give me the same
 5   assurance for the government?
 6            MS. NeSMITH:  Yes, Your Honor.
 7            THE COURT:  Mr. Stetson, knowing the rights that you
 8   will be waiving and considering everything we have discussed
 9   here this morning, how do you now plead in response to
10   Counts One and Two of this information?
11            DEFENDANT STETSON:  Guilty, Your Honor.
12            THE COURT:  Are you pleading guilty because you are,
13   in fact, guilty of these offenses?
14            DEFENDANT STETSON:  Yes, sir.
15            THE COURT:  Mr. Wiggen, how do you now plead in
16   response to Counts One and Two of this information?
17            DEFENDANT WIGGEN:  Guilty.
18            THE COURT:  And are you pleading guilty because you
19   are, in fact, guilty of these charges?
20            DEFENDANT WIGGEN:  Yes, sir.
21            THE COURT:  I find that each of you is alert and
22   intelligent.  I find that you understand the nature of the
23   charges against you.  I find that you appreciate the
24   consequences of pleading guilty.  I find that the facts that
25   the government is prepared to prove and that you have admitted
```

1    are sufficient to sustain your guilty plea.  I find that the

2    plea is freely and voluntarily made after consulting with

3    competent counsel with whom you are well pleased.

4           I accept each of your pleas.  I adjudicate you guilty

5    in accordance with your pleas.

6           I order the preparation of the presentence report.

7           The probation officer, who is here in the courtroom,

8    is going to be preparing a presentence report.  That report is

9    the first way I get information to consider in connection with

10   your sentencing.  So, if there is information you'd like me to

11   have, provide it to the probation officer.  If there are

12   people you'd like her to talk to, tell her who they are and

13   how to get in touch with them so that she may consider doing

14   that.

15          When the report comes out, you'll have the right to

16   read it.  You should do so very carefully.  If there is

17   anything about that presentence report that is not true or

18   anything is left out, you need to let your lawyer know that

19   right away so that your lawyer can make appropriate objections

20   on your behalf.  The court's rules have strict time limits

21   within which any objections have to be made, so it's important

22   for you to read that report just as soon as you get it and

23   talk with your lawyer about it promptly.

24          If there are objections, then, the lawyers -- your

25   lawyer and the lawyer for the government and the probation

1    officer will try to straighten out the situation, figure out

2    what the correct situation is.  If everybody is not able to

3    agree, then I will resolve the dispute at the time of the

4    sentencing hearing.  In order to get that whole process

5    started, you've got to let your lawyer know of any problems

6    with the presentence report.

7           You should cooperate fully with the probation officer

8    in this process.  You have the right to have your lawyer

9    present when you talk to the probation officer.  You don't

10   have to do that.  It's entirely up to you, but it's a right

11   that you do have.

12          Sentencing is set for Wednesday, February 1st, at

13   10:00 a.m.  That's February 1st, 2006.

14          MS. NeSMITH:  Your Honor, one last matter on the plea

15   agreement.  Would it be acceptable to the court for us to

16   insert the five-year maximum penalty?  I know it's on the

17   record.  If the court would like to, we can insert it and have

18   the defendants initial it.

19          THE COURT:  We can.  I'm not sure we need to.

20   Candidly, it would be unlikely in the case that the combined

21   sentence is going to exceed ten years.  The fact that they

22   indicated a ten-year maximum, I think the answers is what they

23   need for today.  So, I'm inclined to leave it clear on the

24   record.

25          I have changed the release order for Mr. Stetson to

1    provide for his attendance full time at college rather than

2    employment.  I'm going to leave the release orders and the

3    appearance bonds here.  When those are executed and

4    acknowledged, I'll sign the order of release.

5        MR. MORRIS:  Your Honor, in that regard, Mr. Wiggen

6    is currently not enrolled, but has enrolled for the spring.

7    Similar to Mr. Stetson, I would request that the court

8    authorize him to attend school, albeit I think it will be on a

9    part-time basis, and he would have to work as well.

10        Full-time enrollment?

11        DEFENDANT WIGGEN:  Yes, sir.

12        MR. MORRIS:  It would be full-time enrollment in the

13    spring, Judge.

14        THE COURT:  Ms. Wilson, I should have asked you

15    before.  I'm inclined to edit these to provide for full-time

16    college attendance.

17        PROBATION OFFICER WILSON:  That's the district

18    understanding, Your Honor.  One other question.

19        THE COURT:  All right.

20        PROBATION OFFICER WILSON:  No contact with the

21    victims or potential witnesses, will that include the

22    co-defendant?

23        THE COURT:  Is there any reason why they should have

24    contact with one another?

25        MR. MURRELL:  It's not an issue one way or the other

PDF created with pdfFactory trial version www.pdffactory.com

1    really.

2          THE COURT:  All right.  They shouldn't have contact

3    with one another.  I'm not going to edit it.  They are each

4    obviously a potential witness with respect to any sentencing

5    issues.

6          All right.  I'm going to leave the orders for release

7    and the appearance bonds here for you to handle with the

8    courtroom deputy.

9          Is there anything else that we need to do in

10   Mr. Stetson's case or Mr. Wiggen's case this morning, other

11   than these?

12         I thank you all.  We'll be in recess.

13       (The proceedings adjourned at 11:51 a.m.)

14                    *  *  *  *  *  *  *  *

15

16

17

18   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.  Any
19   redaction of personal data identifiers pursuant to the
     Judicial Conference Policy on Privacy are noted within the
20   transcript.

21

22

23   _____                  _____

     Judy A. Gagnon, RPR                              Date
24   Official U.S. Court Reporter

25